UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCOLN BENEFIT LIFE COMPANY,

       Plaintiff,

v.                         Case No. 8:12-cv-1729-T-33EAJ

JOANNE BAUER IRREVOCABLE LIFE
INSURANCE TRUST 12-2-2005,
MICHAEL R. BRAUN, as trustee of
the Joanne Bauer Irrevocable
Life Insurance Trust 12-2-2005,
and JOANNE BAUER,

       Defendants.
_____/

**ORDER**

This matter is before the Court pursuant to the Motion to Dismiss Complaint (Doc. # 12), filed on September 25, 2012, by Defendants Michael R. Braun and the Joanne Bauer Irrevocable Life Insurance Trust 12-2-2005 (the "Trust"). Plaintiff Lincoln Benefit Life Co. filed its Response in Opposition (Doc. # 18) on October 30, 2012. With leave of Court, Braun and the Trust filed a Reply (Doc. # 26) on December 7, 2012, and Lincoln filed a Sur-Reply (Doc. # 29) on December 20, 2012. Upon due consideration, the Court denies the Motion.

**I.   Factual and Procedural Background**

The following factual discussion, taken from Lincoln's Complaint (Doc. # 1), is accepted as true for the purpose of

addressing the Motion. Lincoln is a life insurance company headquartered in Lincoln, Nebraska, and licensed and authorized to issue insurance policies in the state of Florida. (Id. at ¶ 4). Defendant Joanne Bauer resides in Sarasota County, Florida. (Id. at ¶ 7). The Trust is subject to the ownership and control of its trustee, Braun, who is a citizen of the state of Georgia. (Id. at ¶ 5).

On or about February 15, 2006, Lincoln received an application for a Flexible Premium Adjustable Life Insurance Policy (the "Application") proposing Bauer as the insured. (Id. at ¶ 21). The Application was purportedly signed on January 18, 2006, by Bauer as the proposed insured, by Braun on behalf of the Trust as the intended owner and beneficiary of the policy, and by Suzanne Rubio as the agent. (Id.). At the time the Application was submitted, Rubio was an independent insurance agent with offices in Boca Raton, Florida. (Id. at ¶ 22).

Lincoln received a Statement of Health and Insurability and Verification of Medical Exam purportedly signed on July 26, 2006, by Bauer, Braun and Rubio. (Id. at ¶ 24). The documents reflect that they were faxed between Braun's offices in Georgia and a fax number in the 941 area code, which includes Manatee, Sarasota, DeSoto and Charlotte counties in

Florida. (Id.). Lincoln received an initial premium check dated July 24, 2006, in the amount of $53,688.00, written by the Trust. (Id. at ¶ 25).

Lincoln issued Policy No. 01N1286730 effective May 3, 2006, for $1,200,000.00 in coverage (the "Policy"). (Id. at ¶ 26). The Trust has continued to pay the premiums due on the Policy, which remains current and in force. (Id. at ¶ 27). As of the date of the Complaint, Lincoln has received a total of $242,812.95 in premium payments. (Id. at ¶ 28).

Lincoln alleges that the Policy was procured as part of a "stranger originated life insurance," or "STOLI" scheme. In such an arrangement, investors acquire policies on the lives of persons with whom they have no familial relationship or in whose longevity the investors possess no legally cognizable interest. (Id. at ¶ 12). Often, investors purchase beneficial interests in insurance trusts or ownership in shell corporations that own the policies. (Id.). In any event, the policies are procured with the expectation that the investors will profit by the death of the insureds. (Id.).

STOLI transactions run afoul of state insurable interest laws, which require that a policy owner have a legally cognizable interest in the longevity of the insured at the time the policy is issued. (Id. at ¶ 13). "Although it is

3

sometimes permissible for an investor to obtain an interest in a legitimately procured life insurance policy, it is unlawful to procure a policy for the sole purpose of transferring it, directly or indirectly, to an investor." (Id. at ¶ 11).

In August 2005, Bauer was solicited to participate in a STOLI arrangement by Harry Hammond, principal of Hammond Financial Group, who worked with Harvey Altholtz and Adam Altholtz of Wealth Strategy Partners to obtain a policy on Bauer's life. (Id. at ¶¶ 30-31). Both Hammond Financial Group and Wealth Strategy Partners are Florida limited liability companies with their principal place of business in Sarasota, Florida. (Id.).

Lincoln alleges that Braun communicated with these individuals and entities by fax, telephone and otherwise, working with them to procure a second STOLI policy on Bauer's life without Bauer's knowledge or consent. (Id. at ¶ 32). "Bauer first learned of the second STOLI Policy, after it was issued by Lincoln, when she was contacted by her treating physician's office to verify certain medical information in connection with a second STOLI policy." (Id. at ¶ 33). She believes that the individuals involved forged the documents used to obtain the Policy. (Id. at ¶ 34). She further asserts that she never authorized Braun to set up the Trust, of which

4

Braun is trustee, that is the owner and beneficiary of the Policy. (Id. at ¶ 35).

"Bauer claims that she has been harmed by the unlawful procurement of the Policy because, among other things, the second STOLI policy prevents her from obtaining additional life insurance in her own name." (Id. at ¶ 36). Lincoln claims that the Policy is void *ab initio* and that it is entitled to retain the premiums paid. (Id. at ¶¶ 43-44). Lincoln further claims that it has incurred substantial damages, including costs and expenses associated with the issuance of the Policy. (Id. at ¶ 50).

Lincoln filed suit in this Court on August 2, 2012, seeking declaratory judgment for rescission and/or voiding the Policy based upon a lack of insurable interest (Count I) and compensatory and consequential damages against Braun and the Trust as a result of misrepresentations made in procuring the Policy (Count II). (Doc. # 1). Braun (as the Court will refer to Braun and the Trust collectively) seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. (Doc. # 12).

## II. Legal Standard

The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over a nonresident

defendant. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

Where the defendant submits affidavits contradicting the plaintiff's allegations, the burden generally shifts back to the plaintiff to produce evidence in support of jurisdiction. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." S & Davis Int'l, Inc. v. Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier, 288 F.3d 1264, 1269 (11th Cir. 2002).

## III. Analysis

The determination of whether the Court has personal jurisdiction over a defendant is governed by a two-part analysis. First, the plaintiff must have alleged facts sufficient to subject the defendant to Florida's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218

F.3d 1247, 1249 (11th Cir. 2000) (citing <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996)). Once the Court has determined that Florida's long-arm statute is satisfied, it must decide whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. <u>Sculptchair</u>, 94 F.3d at 626 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).

## A.   Florida's Long-Arm Statute

Braun does not contest that Lincoln has alleged facts "that could support personal jurisdiction over Braun consistent with Florida's long-arm jurisdiction." (Doc. # 12 at 5). Braun concedes Florida's long-arm jurisdiction pursuant to Fla. Stat. § 48.193(1)(d), which applies to nonresident defendants who have "contract[ed] to insure any person, property, or risk located within the state at the time of contract." Because Braun has contracted to insure Bauer's life, § 48.193(1)(d) appears to be satisfied.

Despite Braun's concession as to Florida's long-arm jurisdiction, and for reasons that will become apparent below, the Court finds it necessary to sort out the parties' arguments regarding the requirement of "connexity" between Braun's activities and Lincoln's cause of action. Under

7

Florida law, a plaintiff's claims must arise from the
defendant's acts in order for Florida's long-arm jurisdiction
to be triggered. Fla. Stat. § 48.193(1); Wendt v. Horowitz,
822 So. 2d 1252, 1260 (Fla. 2002).

Lincoln asserts that the connexity analysis is relevant
only to § 48.193(1)(b), which applies to defendants who have
"committ[ed] a tortious act within this state," and has no
application to § 48.193(1)(d). That is incorrect. The
connexity requirement applies to § 48.193(1) as a whole,
including subsection § 48.193(1)(d), which "requires that the
cause of action arise from the contracting for insurance."
Rinker v. Carnival Corp., No. 09-23154-Civ, 2011 WL 3163473,
at *2 (S.D. Fla. July 26, 2011). The Court finds that the
connexity requirement is met here because the Policy on
Bauer's life is central to Lincoln's claims. Braun is subject
to Florida's long-arm jurisdiction under § 48.193(1)(d).[1]

B.   **Due Process**

Next, the court must consider whether the existence of
personal jurisdiction over Braun comports with Due Process

---

[1] Braun contests the assertion that he committed any
tortious act that would subject him to Florida's long-arm
jurisdiction pursuant to § 48.193(1)(b). Lincoln cautiously
sidesteps this issue, noting that it need only satisfy one
prong of § 48.193(1).

8

principles. See Pureterra Naturals, Inc. v. Cut-Heal Animal Care Products, 674 F. Supp. 2d 1294, 1298 (M.D. Fla. 2009). This requirement is met "if the non-resident defendant has established certain minimum contacts with the forum." Oldfield v. Pueblo de Bahia Lora, 558 F.3d 1210, 1220 (11th Cir. 2009) (citations and internal quotations omitted).

The requirements for minimum contacts vary depending upon whether jurisdiction over a non-resident defendant is general or specific. Because the Complaint alleges that Braun engaged in specific conduct directed toward Florida, the Court's jurisdiction would be specific rather than general for purposes of the minimum contacts analysis.

Specific jurisdiction "arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint" such that the defendant "purposefully avails [him]self of conducting activities within the forum State." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000) (internal quotations and citations omitted). Such activities give the defendant "fair warning" that he may be subject to suit in the forum State. PVC Windows, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 811 (11th Cir. 2010).

Braun contends that he has not conducted any activity in Florida connected to Lincoln's claims. (Doc. # 12 at 7). He argues that the Policy lies at the heart of both claims and, because the Policy was delivered to Braun in Georgia, it is subject to Georgia law. (Id.). He further contends that life insurance is personal property, in this case located in Georgia. (Id.). In addition, he asserts that he does not conduct any activities in the State of Florida, that all services related to the Trust have been provided from his office in Georgia and that he never performed any acts in Florida related to the Trust or Policy. (Id. at 8). Finally, he argues that Bauer provides the only connection to Florida, and Lincoln claims that she did not participate in procuring the Policy. (Id.).

Next, Braun argues that Lincoln cannot meet the personal availment requirement such that Braun could reasonably anticipate being haled into court here. (Id. at 9). In expounding this theory he focuses on the Policy as a contractual relationship between the parties. (Id.). If this matter were solely a contract dispute, the Court might be persuaded that minimum contacts have not been established. The Supreme Court has cautioned that a contract, standing alone, does not automatically establish sufficient minimum contacts

10

with a forum. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 478 (1985). The Eleventh Circuit has held that a contractual relationship can satisfy the minimum contacts requirement if, among other things, the parties engaged in significant negotiations in the forum state or otherwise had a continuing relationship, or that the contract was to be performed in the forum. <u>Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.</u>, 792 F.2d 989, 993-994 (11th Cir. 1986). Those factors are absent here.[2]

However, Braun's arguments overlook Lincoln's claim of misrepresentation against Braun. In cases involving intentional torts, minimum contacts are determined using the "effects test" established in <u>Calder v. Jones</u>, 465 U.S. 783 (1984). For the effects test to be satisfied, the defendant must have "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing injury within the forum that the defendant should have reasonably anticipated." <u>Oldfield,</u> 558 F.3d at 1221 n.28. The commission of an

_____

[2] Braun further contends that this Court cannot exert personal jurisdiction over him as trustee of a Georgia trust, citing <u>Hanson v. Denckla</u>, 357 U.S. 235 (1958). However, the issue in <u>Hanson</u> was the validity of a trust agreement executed in Delaware by a trust company incorporated there and a settlor domiciled in Pennsylvania. <u>Id.</u> at 252. Given that the trust agreement itself is not at issue here, the analysis in <u>Hanson</u> is inapposite.

intentional tort satisfies the personal availment requirement, and presumes that the defendant should have anticipated being haled into court in the forum to answer for the resulting injury. New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).

In his Reply, Braun asserts that the effects test cannot establish personal jurisdiction in Florida because the alleged misrepresentations were committed in Georgia and aimed at Lincoln in Nebraska. (Doc. # 26 at 2). Any actionable injuries would have been suffered in Nebraska and not in Florida. (Id.). As Lincoln points out, however, "Braun cites no case law for the proposition that injury to a foreign company doing business in Florida necessarily occurs only in the home state of that company." (Doc # 29 at 4). Lincoln is licensed to issue insurance policies in Florida and has enumerated specific injuries suffered here, including the costs of defending a lawsuit filed by Bauer in Florida state court and commission payments to Rubio. (Id. at 3). Braun's reiteration that Lincoln is headquartered in Nebraska does not alter the fact that Lincoln's Florida operations have been affected in this matter.

Braun further argues that the single fax document Lincoln claims was sent by Braun to a third party in Florida cannot

12

establish minimum contacts. (Doc. # 26 at 2). He concedes that
such communications can give rise to personal jurisdiction but
raises the issue of Florida's connexity requirement. (Id.)
Lincoln argues that the connexity requirement pertains to
Florida's long-arm statute, not the minimum contacts analysis.
The Court agrees.

The Florida Supreme Court has explained that the
connexity requirement is a creature of state law. White v.
Pepsico, Inc., 568 So. 2d 886, 888 (Fla. 1990). Furthermore,
the Florida Supreme Court has emphasized that "the
jurisdictional analysis under the Florida long-arm statute and
the jurisdictional analysis under the federal constitution are
distinct." Madara, 916 F.2d at 1514-15. The United States
Supreme Court has expressly refused to add a state's connexity
requirement to the constitutional requirement of due process.
Estate of David L. Portnoy v. Cessna Aircraft Co., 603 F.
Supp. 285, 290 (S.D. Miss. 1985). As noted above, the Court
finds that the connexity requirement has been satisfied as to
§ 48.193(1)(d) of Florida's long-arm statute; Braun's
connexity argument is misplaced here.

Furthermore, Braun's argument ignores other allegations
in the Complaint, namely that several Florida residents
participated in soliciting Bauer in Florida to participate in

13

the STOLI transaction and in obtaining the Policy; that the Application and medical documents were purportedly signed by Bauer, Rubio and Braun; that the Statement of Health and Insurability and Verification of Medical exam was faxed between Braun's offices in Georgia and a fax number in Florida; and that Braun has worked with Rubio in procuring multiple other STOLI policies in Florida. Braun does not controvert these allegations, which the Court must accept as true. See Cable/Home Commc'n Corp. v. Network Prod. Inc., 902 F.2d 829, 855 (11th Cir. 1990) ("The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits.").

In sum, the Court finds that the effects test has been satisfied. Braun's alleged activities were directly aimed at Florida: Lincoln alleges that he communicated with Florida residents in order to unlawfully procure a policy insuring the life of a Florida resident. See AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC, 608 F. Supp. 2d 1349, 1355 (S.D. Fla. 2009) (Delaware trust defendants who conspired with Florida residents to obtain STOLI policies insuring Florida residents "purposely directed" their activities toward Florida). Braun should reasonably have anticipated being sued

14

in Florida court for his alleged misrepresentations. See id. (Trust defendants "must have been reasonably able to anticipate being sued in Florida court" for STOLI scheme involving Florida residents). Thus, minimum contacts have been satisfied and the Court will turn to the second prong of the Due Process analysis.

Courts consider the following factors in determining whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice:

> (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and ([e]) the shared interest of the several States in furthering fundamental substantive social policies.

Future Tech. Today, 218 F.3d at 1251. However, "[t]he presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction. To rebut that presumption, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Oldfield, 558 F.3d at 1221 n.29 (quoting Burger King, 471 U.S. at 472).

Braun contends that his burden in defending this suit in Florida is significant. "As an attorney, the disruption to his

practice in having to travel to Florida will deprive him of his personal income during such time away from his practice and his clients." (Doc. # 12 at 12). He further argues that Florida has little interest in this action because the Policy was delivered in Georgia and is held by a Georgia trust. (Id.). The only Florida resident who is a party to this litigation is Bauer and, Braun contends, her rights and obligations are not involved.[3] (Id.).

Braun asserts that "there is nothing about the Florida forum that makes it more convenient or effective for Plaintiff to obtain the relief requested against Braun," since any judgment would have to be executed in Georgia. (Id. at 13). He argues that the interstate judicial system's interest in obtaining the most efficient resolution weighs in his favor because the relevant evidence resides outside Florida. (Id.).

---

[3] In his Reply, Braun argues that Bauer is not a necessary party to this suit. (Doc. # 26 at 3). "In fact, it is suspected that Ms. Bauer was improperly joined as a defendant only to justify hauling Braun into Florida." (Id.). Braun offers no case law in support of this argument and, in any event, the Court declines to address it. "District Courts, including this one, ordinarily do not consider arguments raised for the first time on reply." Broughton v. HPA Subway, Inc., No. 11-0036-WS-N, 2011 WL 1321728, at *1 (S.D. Ala. Apr. 5, 2011); see also Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.").

Finally, he contends that the social policy factor weighs heavily in his favor because Georgia has an interest in determining the validity of the Policy and no rights or interests of a Florida resident are involved. (<u>Id.</u>).

The Court is not convinced that Braun's burden in defending this suit in this forum is significant. As the Eleventh Circuit has noted, "modern methods of transportation and communication have significantly alleviated any burden" associated with defending a lawsuit in another state. <u>Stubbs</u>, 447 F.3d at 1364. On the other hand, Florida courts have a strong interest in adjudicating disputes involving intentional misconduct by non-residents that causes injury in Florida. <u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1288 (11th Cir. 2008) (citing <u>Sculptchair</u>, 94 F.3d at 632). Florida has a further interest in this matter because a Florida citizen was insured under the Policy. <u>AXA Equitable Life Ins. Co.</u>, 608 F. Supp. 2d at 1355.

Lincoln has significant interest in obtaining effective relief in Florida because the Policy was allegedly procured through the coordinated efforts of Braun and Florida citizens, and the named insured is a Florida citizen. To the extent that Georgia has an interest in the outcome of this matter, "the process of resolving potentially conflicting 'fundamental

17

substantive social policies' can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum." <u>Burger King</u>, 471 U.S. at 484.

Upon due consideration, the Court determines that its exercise of personal jurisdiction over Braun comports with traditional notions of fair play and substantial justice. Accordingly, Due Process requirements have been satisfied and this Court may properly exercise personal jurisdiction over Braun.

The Court must take up one additional matter. In his Reply, Braun states that "a complaint was filed today in federal court sitting in Georgia against Lincoln covering all of the issues in this case." (Doc. # 26 at 4 n.2). "As such, the matter is now pending before the appropriate forum and the prosecution of this matter in Florida – where the Court has no jurisdiction over Braun – is not justified." (<u>Id.</u>). Lincoln responded by indicating an intent to file a motion to dismiss the Georgia action pursuant to the first-filed rule. (Doc. # 29 at 8 n.1). That motion is now pending before this Court.

The Court will address Lincoln's motion in due course. For purposes of Braun's Motion to Dismiss, the Court notes that "[w]here two actions involve overlapping parties and are

18

pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005). "Moreover, we require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." <u>Id.</u> At this juncture, Braun has not identified compelling circumstances that would warrant such an exception.

Accordingly, it is

**ORDERED ADJUDGED and DECREED:**

Defendants Michael R. Braun and the Joanne Bauer Irrevocable Life Insurance Trust 12-2-2005's Motion to Dismiss Complaint (Doc. # 12) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>2nd</u> day of January, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record